IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | |
|---|---|
| PATRICK KEITH HIRT, | Cause No. CV 09-83-M-DWM-JCL |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE |
| SAM LAW; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

On June 8, 2009, Petitioner Patrick Hirt filed this action for writ of habeas corpus under 28 U.S.C. § 2254. Hirt is a state prisoner proceeding pro se.

On October 20, 2009, pursuant to Rule 4 of the Rules Governing Section 2254 Cases, the State was ordered to file transcripts of the sentencing hearing and the evidentiary hearing on Hirt's petition for postconviction relief in the trial court. It was not ordered to file an Answer and has not formally made an appearance in the case. [Second] Order to State File Transcripts (doc. 9) at 2 ¶ 2; see also [First] Order

to State to File Transcripts (doc. 7) at 1-2.

## I. Background[1]

On September 10, 2002, Hirt was asked to stay with a 14-year-old girl while her mother and her mother's partner went to jail as a result of a domestic abuse incident. Hirt arrived at the girl's house at about midnight and remained there through the early afternoon. Sentencing Tr. (doc. 10-1) at 11:6-12:1. During that time, he was drinking. Id. at 47:6-7. Hirt admitted that he inappropriately touched the girl for the purpose of sexual gratification. Id. at 8:12-18.

On June 2, 2003, Hirt was charged in Montana's Twenty-First Judicial District Court, Ravalli County, with one count of sexual assault, a violation of Mont. Code Ann. § 45-5-502(1) ("Count 2"), based on the September 10 incident. He was also charged with one count of sexual intercourse without consent, a violation of Mont. Code Ann. § 45-5-503(1) ("Count 1"), based on another incident involving a three-year-old girl. Hirt v. State, 206 P.3d 908, 910 ¶ 5 (Mont. 2009); Pet. Ex. C (doc. 1-3) at 6.[2] Count 1 subjected Hirt to a maximum sentence of life or 100 years in prison and a mandatory minimum of four years. Mont. Code Ann. § 45-5-503(3)(a). Count

---

[1] Except where otherwise noted, all references to the Montana Code Annotated mean the version of the Code effective August 21, 2002, following the August 2002 Special Session.

[2] Transcript citations refer to the specific page and line numbers of the transcript. Other page references relate to CM-ECF page numbers, not the page number of the original document. In ECF, each page is consecutively numbered. Thus, the cover page of a brief, for example, is page 1.

2 subjected him to the same maximum and a mandatory minimum of two years. Id. § 502(3). In the original proceedings, Hirt was represented by Larry Mansch, then by Sasha Brownlee, then by Kelli Sather. Pet. Ex. B (doc. 1-2) at 8.[3]

Jury trial was scheduled to commence on December 15, 2003. Sather represented Hirt. On that morning, the parties reached a plea agreement. Hirt pled no contest to Count 2. The State agreed to recommend a sentence of no more than ten years. Hirt was free to advocate for any sentence. The parties agreed that Michael English, a licensed clinical social worker, would perform the required risk assessment, Mont. Code Ann. § 46-23-509(2), to provide some measure of the likelihood that Hirt would reoffend. Pet. (doc. 1) at 6.

Probation Officer William Buzzell's initial Presentence Investigation Report stated that Hirt had suffered three felony convictions and was named in an outstanding warrant issued by a court in Pennsylvania. Based in part on Hirt's criminal history, as reported by Buzzell, English concluded that Hirt was a sexually violent predator and was highly likely to reoffend. He recommended a Level 3 designation, the highest level. Mont. Code Ann. § 46-23-509(2)(c).[4] Buzzell, in turn,

---

[3] Petition Exhibit B is Hirt's opening brief on postconviction appeal. It includes, among other things, the trial court's order denying postconviction relief (Pet. Ex. B at 38-62), and the judgment (id. at 65-72).

[4] If the trial court designates an offender as a Level 3, it must also designate him a sexually violent predator. Mont. Code Ann. § 46-23-509(3)(c). Under the circumstances of Hirt's case, the

recommended that the trial court should reject the plea agreement. Pet. Ex. B at 73.

Unhappy with English's recommendation, Sather contacted Dr. Michael Scolatti for a second opinion. Dr. Scolatti agreed with English that Hirt should be designated a Level 3 offender. Sather did not use Dr. Scolatti's evaluation, did not call him as a witness at sentencing, and did not submit the report to the court or the State. Without Sather's knowledge or approval, Dr. Scolatti sent his evaluation to the State.

Before sentencing, Sather produced evidence to Buzzell showing that Hirt had only one felony conviction. As a result, Buzzell changed his position and recommended that the trial court adopt the plea agreement. Pet. Ex. B at 73.

At the start of the sentencing hearing on April 22, 2004, Hirt entered a guilty plea because he could not plead no-contest to a sex offense. Mont. Code Ann. § 46-12-204(4); Sentencing Tr. at 4:4-8:21.

In the sentencing portion of the hearing, Sather extensively cross-examined English. Sentencing Tr. at 20:24-33:5. English admitted that the outcome of his evaluation might be different if based on the correct criminal history. Id. at 28:18-

---

term "sexually violent predator" is defined in § 502(2), (4), and (8). A Level 3 offender cannot be sentenced to a community corrections facility or treatment program but must go to prison. Id. § 46-18-104(2)(a)(iii)(A), -105. Lower-level offenders may eventually be released from the sex offender registration requirement, § 46-23-506(3), but a Level 3 offender must register for the remainder of his life, § 506(5)(d).

30:22.  Near the conclusion of the hearing, the State mentioned Dr. Scolatti's report. The trial court did not have it.  Sather was surprised to learn the State had it. Postconviction Hr'g Tr. (doc. 10-2) at 89:12-24.  She conceded that Dr. Scolatti had also arrived at a Level 3 designation but noted that he, like English, had inaccurate information about Hirt's criminal history.  The State then pointed out that Dr. Scolatti found Hirt had a deviant sexual interest in girls.  Sather countered by pointing out that Dr. Scolatti's report was equivocal: "there's the things that say he's, you know, high risk to re-offend and things that say he isn't."  She declined the trial court's offer of a continuance to permit her to call Scolatti as a witness, and the trial court moved on. Sentencing Tr. at 47:19-52:10.

The trial court explained that Hirt probably would have received a longer jail term if he had been convicted of three felonies – as Buzzell had initially recommended.  Id. at 59:9-23.  The court said:

> The reasons for my sentence are this:  I find, as I saw in this report and heard everything as the case went on, that September 10th, 2002, it was fortuitous from your point, certainly not something that was initially planned, that the youth's mother and her boyfriend couldn't protect her anymore and left the house because they were involved in their own domestic abuse dispute.  You were left alone with this youth, 14-year-old.  From what I gleaned from the report, you made – you made your persona known to her.  You were drinking then, by your own admission. When you're drinking, I suspect the persona that comes out is one of an emboldened person, one that is a little bit reckless and rakish, one that wasn't afraid to talk to a 14-year-old about things that normally

wouldn't be talked about sexually.

. . . So, essentially, you had her trapped in her own house and were probably increasingly emboldened to see if you could achieve whatever gratification you were looking for from her when she had nowhere to go and no one to take care of her. It's to your credit, I suppose, that your advances only went so far, but they were persistent, repeated, and part of a continual pattern that you have as far as abusing alcohol, abusing the system, disregarding the laws.

I recognize in this case you're only charged with one event. But, of course, the Court is aware that there was a separate matter that was charged against you. In that Mason case,[5] I'm allowed to consider other charges in terms of the pattern, not to sentence you unfairly for something that wasn't proven beyond a reasonable doubt but at least to incorporate that knowledge into what I know from the sexual offender amenability to treatment evaluation.

My designation of you as a Level 3 offender was based on what I read in here, that your history of alcohol use and drug use is not likely to change. It didn't change over the last 15 years. . . . By your own admission, you've just got repeat problems with alcohol.

. . .

But until you got to that point today where you could make these admissions, almost until you could dry out from your alcohol and drug use or until you recognized that it was time finally to admit to yourself what happened, you have this weakness where you continually fall into the pattern of letting alcohol, letting drugs, letting potentially even whatever level of mental health you have to act as excuses for your behaviors in life. And my view is that you are a high risk, a very high risk to fall back into that pattern of having alcohol. You've never before been able to deny yourself that palliative, that medicative intervention, if you want to style it that, or simply that relief or that means of escape. My view is that you wouldn't deny that tomorrow if the Court were to let you back into the community. I don't think you're safe to be allowed back in the community.

---

[5] State v. Mason, 82 P.3d 903, 907-09 ¶¶ 20-26 (Mont. 2003), overruled on other grounds by State v. Herman, 188 P.3d 978, 981 & n.1 (Mont. 2008).

Sentencing Tr. at 55:24-56:15, 56:20-57:4, 57:15-21, 58:15-59:8.

In its written Judgment, the trial court said that "it is Defendant's lack of ability to manage his behavioral and mental health problems that is placing him in prison – not the mental health problems themselves." Pet. Ex. B at 71 (Judgment at 8). Hirt was sentenced to ten years in prison and designated a Level 3 offender. Pet. at 2 ¶ 4; id. at 8.

Hirt appealed. New counsel, Keithi Worthington, was appointed. Hirt explained to her that he believed his sentence of imprisonment was based on inaccurate information. She did not raise the issue on appeal. She obtained remand on other issues not involved here – restitution and payment of court-appointed attorney costs. State v. Hirt, 124 P.3d 147, 148 ¶ 1 (Mont. 2005). Hirt was resentenced in the trial court. An Amended Judgment was entered on December 8, 2005. Pet. Ex. C at 19.

On November 15, 2006, Hirt, represented by Randall Lint, filed a petition for postconviction relief in the trial court.[6] He claimed that Sather and Worthington both provided ineffective assistance on sentencing issues and that his sentence was based

---

[6] Hirt also filed complaints against Scolatti, English, and Paul Moomaw, whose evaluation was incorporated in English's report, with the Correctional Health Care Review Team of the Montana Department of Labor and Industry. Two different teams reviewed his complaints. The Montana Supreme Court affirmed the district court's affirmation of the review teams' determination that no unprofessional conduct occurred. Hirt v. Dep't of Labor & Industry, No. DA 06-0059 (Mont. Sept. 26, 2006).

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 7

on materially inaccurate information.

The trial court held a hearing on July 30, 2007. Sather and Worthington testified. Sather explained that she contacted Dr. Scolatti, briefly described Hirt's case to him, and asked whether he might give a lower risk assessment than English. Dr. Scolatti said he might rate Hirt a Level 2 offender. Sather then asked him to conduct a full assessment. Dr. Scolatti found that Hirt had a pathological interest in young girls and rated him a Level 3 offender. Sather asked Dr. Scolatti whether his recommendation would change if he had known Hirt had one rather than three felony convictions, and Dr. Scolatti said it would not. Sather explained:

> I remember talking, you know, to Scolatti, like I said, about all these things that I thought Mike English had done wrong. But then in talking to him before sentencing, you know, he was like it doesn't – a lot of it is the CD [chemical dependency] history. We talked about mental health history. That was another thing I was upset about, and I even cross-examined Mike English about that. . . .
> Well, unfortunately, Dr. Scolatti agreed with Mike English on almost all of these points, and that's why I really didn't want to call him.

Postconviction Hr'g Tr. at 72:12-24. Hirt contended that Scolatti's report should have been redone based on the correct criminal history. Id. at 73:19-78:4. On cross-examination by prosecutor Geoffrey Mahar, that matter was crystallized:

> Mahar: I'm just trying to cut to the chase here. If Mr. Hirt in April 2004 has 20 different convictions and one of them is a felony, is it really going to make a whole hill of beans whether or not he has another two felonies or not or a

          warrant in Pennsylvania?

Sather:     Dr. Scolatti told me it wasn't.

Mahar:     Because there were other factors?

Sather:     Yes.

Id. at 86:3-11. The reason for Sather's strategic decision not to call Scolatti was also clearly spelled out:

    Mahar:     Okay. So, for example, just to be specific – and I visited with Mr. Hirt about this earlier – if Dr. Scolatti is not there, then I don't have the opportunity, say, for example, to go over with him in detail the Abel Assessment or any of the other tests that he used to formulate an opinion that Patrick had an attraction to young girls?

    Sather:     Yes.

    Mahar:     Prepubescent girls.

    Sather:     Didn't really want that coming out.

    Mahar:     Okay. Whereas, on the other hand, all you're gaining [if Scolatti is called to testify] is some discussion about whether or not he's got two felonies as opposed to 20 convictions, including a felony?

    Sather:     Right.

Id. at 90:3-17.

On September 28, 2007, before the trial court ruled on the postconviction petition, Hirt, acting pro se, filed a document stating that he was dissatisfied with his

postconviction counsel and raising issues regarding the scientific reliability of some of the tools used in the risk assessments performed by both English and Dr. Scolatti. Pet. Ex. E (doc. 1-5) at 1-8.  Lint filed a motion to withdraw.  Pet. Ex. C at 24.

On October 26, 2007, the trial court denied the postconviction petition.  Pet. Ex. B at 38-62.  It also granted Lint's motion to withdraw and declined to consider Hirt's pro se submission because it was untimely and not properly before the court. Pet. Ex. C at 24.

Hirt again appealed, represented by new counsel Patrick Sandefur.  He argued that his Level 3 designation was based on misinformation regarding his criminal history and that he received ineffective assistance of counsel at sentencing and on direct appeal.  On April 8, 2009, the Montana Supreme Court rejected his claims and affirmed the trial court's denial of postconviction relief.  Hirt, 206 P.3d at 910 ¶ 1.

Hirt timely signed his federal habeas petition and deposited it in the prison mail system on June 5, 2009.  Pet. (doc. 1) at 36, Pet'r Decl. ¶ C; Houston v. Lack, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule); Bowen v. Roe, 188 F.3d 1157, 1159 (9th Cir. 1999).

## II. Hirt's Allegations

Hirt contends, first, that trial counsel Kelli Sather violated his Sixth Amendment right to the effective assistance of counsel because she permitted him to

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 10

be sentenced based on materially inaccurate information.  Pet. at 6-12.  Hirt also describes the information he relayed to postconviction counsel, though he acknowledges that postconviction counsel's performance does not provide a basis for relief.  Id. at 18-20.

Second, Hirt claims that appellate counsel Keithi Worthington violated his due process right to the effective assistance of appellate counsel because she failed to argue on appeal that his sentence was based on materially inaccurate information.  Id. at 13-17.

Third, Hirt claims that his rights to due process and equal protection were violated when English used "scientifically unproven clinical-forensic risk assessment testing procedures" in the course of completing a psychosexual evaluation.  Id. at 21-26.  His fourth claim alleges the same against Dr. Scolatti.  Id. at 27-34.  His fifth claim recapitulates his third and fourth.  Id. at 35.

For his relief, Hirt seeks re-evaluation and resentencing.  Id. at 36.

### III. Analysis

#### A. Standard Governing Federal Habeas Relief

A federal court may provide relief to a state prisoner if the prisoner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Congress "specifies the conditions under which such

relief may be granted." Felker v. Turpin, 518 U.S. 651, 662 (1996). Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Hirt may obtain relief if the state court's denial of his claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if the state court's denial was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams, 529 U.S. at 410).

### B. Ineffective Assistance of Counsel

Strickland v. Washington, 466 U.S. 668 (1984), sets the standards with respect to claims alleging ineffective assistance of counsel. First, Hirt must show that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. Second, he must show that he was prejudiced by counsel's errors. Id. at 693. Under the first prong, counsel's performance need not be perfect. It must, however, fall "within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970)). Under the prejudice prong, Hirt

must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "[T]here is no reason for a court deciding an ineffective assistance claim . . . even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

### 1. Sather's Failure to Call Dr. Scolatti

Sather plainly made a reasonable strategic decision not to call Dr. Scolatti as a witness. The record shows that, had the trial court heard from Scolatti's own lips his assessment of Hirt's likelihood to reoffend, there is a distinct possibility that it would have rejected the plea agreement and sentenced Hirt to a longer prison term. And, even if Sather had challenged the tools underlying Scolatti's assessment, the trial court's reasons for its sentence and designation leave no room for a reasonable probability that it would have designated Hirt a Level 1 or 2 risk to reoffend. Neither prong of the Strickland test is met. The Montana Supreme Court's decision was reasonable. This claim should be denied.

### 2. Hirt's Criminal History

Sather corrected Hirt's criminal history and obtained the maximum benefit from the situation by compelling English to admit his evaluation might be better if he

used the correct criminal history.  Sather reasonably believed that neither English's nor Scolatti's recommended designations would change.  If they did not change, she would be left with no basis even to argue that the Level 3 designation was overstated.  Neither prong of the Strickland test is met.  The Montana Supreme Court's decision was reasonable.  This claim should be denied.

### 3. Appellate Counsel Worthington

Claims of ineffective assistance of appellate counsel are governed by the Strickland standards.  Smith v. Robbins, 528 U.S. 259, 285 (2000).  Because Sather's assistance was reasonable and because the information presented at the sentencing hearing was not incorrect, Hirt's claim against Worthington has no merit.

### 4. Postconviction Counsel Lint

As Hirt acknowledges, there can be no claim of ineffective assistance against postconviction counsel because he is not constitutionally entitled to postconviction counsel.  Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Wainwright v. Torna, 455 U.S. 586, 587-588 (1982) (per curiam).

## C. Due Process and Equal Protection Claims

28 U.S.C. § 2254(d) does not apply to these claims, directed at the assessment tools used by English and Scolatti.  They are procedurally defaulted because they were not fairly presented in the state courts.  However, it is more efficient to address

them on the merits.  28 U.S.C. § 2254(b)(2); Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar); Gutierrez v. Griggs, 695 F.2d 1195, 1198 (9th Cir. 1983).

Hirt misstates Montana law when he says that "English's ultimate conclusion was that Patrick was a HIGH RISK to re-offend and qualified as a Level III offender. Under Montana's SVORA, English's conclusion meant that Patrick was a sexually violent predator." Pet. at 21.  Only the sentencing judge makes the designation. Mont. Code Ann. § 46-23-509(3) (eff. Aug. 21, 2002).

Here, the trial court very plainly stated its reasons for designating Hirt a Level 3 risk to reoffend.  It found that he relied on alcohol both to neutralize his inhibitions and to excuse his behavior and that he was unwilling to recognize or accept responsibility for the fact that he relies on alcohol for these purposes.  It found those facts verified in English's report (or perhaps the presentence report – in context, it is not clear which report the trial court means).  But it found those facts in the first instance based on Hirt's conduct with the victim of his offense, his conduct in the course of the proceedings against him, his fifteen-year record of twenty violations of the law, including one felony, and his lack of success in treatment programs.

In this context, to question the methodological foundation of the assessment

FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE / PAGE 15

tools used by experts in the field of psychology in evaluating all the circumstances involved in a sex offender's likelihood to reoffend is to deny reality. There may well be methodological problems in one or more or all of those tools. But the trial court in this case based its decision on its own observations of Hirt, from his first misdemeanor offense all the way through to the moment, fifteen years later, when he finally pled guilty, as opposed to no contest, to sexually assaulting a 14-year-old girl.

Finally, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. Ltd. v. Carmichael, 526 U.S. 137 (1999), address the Federal Rules of Evidence, not the United States Constitution. They are not binding on state courts, and they do not help a habeas petitioner to show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Hirt identifies no due process violation and no basis for an equal protection claim. His third, fourth, and fifth claims should be denied.

**D. State Claims**

Hirt also claims that his rights under the Montana Constitution were violated. "[F]ederal habeas corpus relief does not lie for errors of state law." Lewis v. Jeffers, 497 U.S. 764, 780 (1990); see also Nunes v. Ramirez-Palmer, 485 F.3d 432, 443 (9th Cir. 2007). All claims under the Montana Constitution should be dismissed.

**V. Certificate of Appealability**

    **A. Governing Law**

"A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c); Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000).  Hirt "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the questions are 'adequate to deserve encouragement to proceed further,'" Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

    **B. Discussion**

The transcripts of the sentencing hearing and the postconviction evidentiary hearing thoroughly refute Hirt's claims.  His criminal history was correctly understood by the trial court.  Hirt's claim that the two experts who provided risk assessments relied on faulty testing instruments, even if true, simply has no weight against the reasons the trial court gave for designating him a Level 3 offender.  Hirt's ten-year prison sentence, as well as his Level 3 designation, were clearly based on his fifteen-year pattern of using alcohol to lower his inhibitions and excuse his behavior to himself.  As the trial court said, Hirt had "never before been able to deny yourself

that palliative . . . that relief or that means of escape.  My view is that you wouldn't deny that tomorrow if the Court were to let you back into the community.  I don't think you're safe to be allowed back in the community."  Neither counsel nor a critique of risk assessment tools could change the trial court's recognition of that pattern.

Hirt has not made a showing with any substance to it that he was deprived of a constitutional right.  A certificate of appealability is not warranted.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1.  Hirt's Petition (doc. 1) should be DENIED on the merits.

2.  The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner Hirt.

3.  A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within fourteen (14) calendar days of the date entered as indicated on the Notice of Electronic Filing.  A district judge

will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

<u>Hirt must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u>  Failure to do so may result in dismissal of his remaining claims.

DATED this 4th day of January, 2010.

 /s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge